**AVIALL OF TEXAS, INC.,**
Plaintiff–Appellee,

v.

**The UNITED STATES, Defendant–
Appellant.**

No. 95–1019.

United States Court of Appeals,
Federal Circuit.

Dec. 1, 1995.

Michael P. Maxwell, Law Offices of Michael P. Maxwell, Los Angeles, California, argued for plaintiff-appellee.

Saul Davis, Senior Trial Attorney, Department of Justice, International Trade Field Office, argued for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, and Carla Garcia–Benitez, Commercial Litigation Branch, Department of Justice, New York City. Of counsel was Karen P. Binder, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service.

Jonathan M. Fee, Grunfield, Desiderio and Lebowitz, Atlanta, Georgia, argued for Amicus Curiae, Delta Air Lines, Inc.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

RADER, Circuit Judge.

In this trade case, the United States appeals the United States Court of International Trade's grant of summary judgment in favor of Aviall of Texas, Inc. (Aviall). Under 19 U.S.C. § 1520(c)(1) (1988) (amended 1993), the trial court permitted Aviall to renew its blanket certification for entry of aircraft parts. Because the Court of International Trade properly applied section 1520(c)(1), this court affirms.

## BACKGROUND

The United States entered into an Agreement on Trade in Civil Aircraft (ATCA) with Canada, the European Communities, Sweden, and Japan in 1979. The ATCA establishes a framework of rules and duty free trade in civil aircraft. The ATCA requires:

> [T]he elimination ... of all normal customs duties on civil aircraft, engines, and ground flight simulators for civil aircraft. Parts, components, or subassemblies of civil aircraft must also be free of normal customs duties if they are (1) for use in civil aircraft, and (2) classified for customs purposes under one of the specific tariff headings listed in the Annex to the Agreement.

In addition, duties on foreign repairs of civil aircraft will be eliminated....

. . . .

The Agreement on Trade in Civil Aircraft [will] provide duty free treatment for civil aircraft and engines and on specified categories of civil aircraft parts....

S.Rep. No. 249, 96th Cong., 1st Sess. (1979), *reprinted in* 1979 U.S.C.C.A.N. (Title VI, Summary of the Agreement).

The Harmonized Tariff Schedule of the United States (HTSUS) (19 U.S.C. § 1202 (1988)), sets forth the requirements for obtaining duty-free treatment under the ATCA. General note 3(c)(iv) of the HTSUS requires documentation that the Administrator of the Federal Aviation Authority has approved the imported articles for use in civil aircraft.

The United States Customs Service (Customs) promulgated implementing regulations for the ATCA in 19 C.F.R. § 10.183 (1995). Section 10.183 states:

(2) *Civil Aircraft Parts.* At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate [or] a blanket certification ... with the district director at each district where civil aircraft parts are to be entered under the provisions of General Note 3(c)(iv), HTSUS.... The blanket certification may be renewed for additional one year periods upon written request to each concerned district director.... Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director in the district where the entry summary is filed shall result in a dutiable entry.

Thus, under this regulation, an importer may obtain duty-free treatment by filing either an entry-by-entry certification for each article or a blanket certification for all articles with Customs. 19 C.F.R. § 10.183(d)(1), (2).

Aviall repairs and sells aircraft engine parts for civil aircraft. It has imported engine parts since 1981. Before this case, Aviall's broker had regularly filed blanket certifications for import of its aircraft engines and parts. The broker filed a blanket certification on November 7, 1989. However, the broker did not renew the certification until notified by Customs that the certification had expired on December 10, 1990. Between November 8, 1990, and December 10, 1990, Aviall continued to import engine parts. Several months later, Customs liquidated the subject entries and denied Aviall duty-free treatment because Aviall had not timely renewed its blanket certification.

Aviall protested that its failure to renew was simply a clerical error covered by 19 U.S.C. § 1520 (1988) (amended 1993). Customs denied Aviall's protests. Aviall appealed to the Court of International Trade. In that forum, Aviall argued that it complied with 19 C.F.R. § 10.183 by filing a written, approved blanket certification. It further contended that expiration of the blanket certification resulted in a defective certification on record, which it could cure under the terms of 19 U.S.C. § 1520(c)(1).

Customs responded that Aviall had not proven that clerical error or inadvertence caused its failure to renew the certification. Customs instead perceived that the failure to renew was negligent inaction, which cannot be cured.

The parties cross-moved for summary judgment. The Court of International Trade granted summary judgment in favor of Aviall. The Court of International Trade found that Aviall's oversight comes within the meaning of inadvertence in section 1520(c)(1).

### DISCUSSION

This case asks whether the Court of International Trade erred in permitting Aviall to correct its failure to renew its blanket certification under 19 U.S.C. § 1520(c)(1). The answer turns on the meaning of "inadvertence" within section 1520(c)(1), a legal determination, which this court reviews *de novo*. *Regiomontana v. United States,* 64 F.3d 1579, 1582 (Fed.Cir.1995).

Section 1520 of title 19 allows Customs to correct errors that occur during liquidation of an entry. Section 1520(c)(1) authorizes Customs to reliquidate an entry to correct:

(1) a clerical error, mistake of fact, or other *inadvertence* not amounting to an error in the construction of a law, adverse

to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or *inadvertence* is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction....

(emphasis added).

The language and context of section 1520 give similar legal effect to clerical errors, factual mistakes, or other inadvertence. The language provides important safeguards against abusive invocation of this right of correction. For instance, an importer may not use this provision to correct an error or inadvertence in the construction of the law. The importer must also produce documentary evidence of inadvertence. Finally, the importer must correct the inadvertence within one year of the liquidation. With these safeguards in place, section 1520 provides no further limitation on errors, mistakes, or other inadvertence. The term "other inadvertence" both expands this right to correct beyond clerical errors and factual mistakes and identifies the right with lapses like errors and mistakes.

This court's predecessor, the United States Court of Customs and Patent Appeals, defined "inadvertence" as an "oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake." *Hambro Automotive Corp. v. United States*, 603 F.2d 850, 854 (CCPA 1979) (quoting *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 336 F.Supp. 1395, 1399 (Cust.Ct.1972), *aff'd* 499 F.2d 1277 (CCPA 1974)). This court, after reviewing the language of and the legislative history behind section 1520, has addressed the scope of this provision:

> Congress clearly envisioned a liberal mechanism for the correction of inadvertences under section 1520(c)(1).

*ITT Corp. v. United States*, 24 F.3d 1384, 1389–90 (Fed.Cir.1994). The Court of International Trade, following the decisions in *C.J. Tower* and *Hambro*, has elaborated on the scope of inadvertence. In *AT & T Int'l v. United States*, 861 F.Supp. 95 (Ct.Int'l Trade 1994), Customs sent form notices to AT & T and its broker requesting documentation. AT & T did not respond to these notices. Customs then sent a proposed rate advance notice. AT & T again did not respond. At length, Customs liquidated AT & T's entry at a higher duty. The Court of International Trade concluded that AT & T's repeated non-response did not constitute inadvertence within the meaning of the statute. *Id.* at 98. The *AT & T* court stated that the action before it was "analogous" to that of *Occidental Oil & Gas Co. v. United States*, 13 CIT 244, 1989 WL 30441 (1989). *Id.* at 99.

In *Occidental Oil*, Customs notified Occidental Oil on numerous occasions that documents had not been received and that the entry would be liquidated as dutiable. Occidental Oil repeatedly did not comply with Customs' requests and notices. Finally, Customs liquidated the entry. Customs stated that Occidental Oil's "failure to file required documents whose absence had been repeatedly called to [Occidental Oil's] attention constitutes negligent inaction, not correctable under [section 1520(c)(1) ]." *Id.* at 245. The Court of International Trade agreed that this conduct was not inadvertence. The court stated that "regardless of whether [Occidental Oil] was guilty of negligent inaction, it has not shown an error that is remedial under 19 U.S.C. § 1520(c)(1)." *Id.*

This court agrees that repeated failures to respond to clear notice in the *AT & T* and *Occidental* cases fall outside of the scope of inadvertence. The *AT & T* and *Occidental* decisions reflect a balance between the liberal scope of correction in section 1520 and the responsibilities of an importer to comply with Custom's lawful requirements.

In this case, Aviall's conduct differs significantly from the conduct of AT & T and Occidental Oil. Aviall had regularly renewed its blanket certification. It received no notice of the expiration of the certification until after its lapse. At that point, Aviall immediately corrected the expired certification by filing protests with entry specific certifications on the same day that it received notice of the expired certification. Moreover, Customs possessed an accurate certification, albeit expired, in its files. Furthermore, Aviall submitted all entry summaries with a desig-

nation for civil aircraft to alert Customs that the parts fell within the duty-free provisions of the ATCA.

Unlike *AT & T* and *Occidental Oil,* Aviall did not repeatedly decline to respond to lawful notifications or requests. Aviall acted promptly to correct its error. Aviall also supplied evidence of inadvertence and mistake.* In sum, the trial court correctly determined that Aviall's conduct constitutes a manifest inadvertence. Under these circumstances, section 1520(c)(1) permits Aviall to correct its error. This court's decision in *United States v. Lockheed Petroleum Servs.,* 709 F.2d 1472, 1 Fed.Cir.(T) 63 (1983), does not compel a different result. In *Lockheed,* Lockheed requested drawback duties under 19 U.S.C. § 1313(a), (g) (1976). Customs requested documentation for Lockheed's request, under 19 C.F.R. § 22.4(g) (1982). Lockheed mailed the documentation by ordinary mail, but it arrived a day late. Customs denied Lockheed's request to waive the untimeliness of its filing. Lockheed alleged the required document was late due to the "unforeseen occurrence" of slow mail delivery. Lockheed argued that equitable relief should be granted because the late arrival of the document was the postal service's fault. This court found that Lockheed could have mailed the document by other means that would have delivered it on time. Thus, Lockheed's affirmative actions prevented the required documentation from arriving on time. This court held that Lockheed's conduct constituted affirmative negligence. *Id.* at 1476, 1 Fed.Cir. (T) at 67.

The *Lockheed* case differs from Aviall's situation. Aviall missed a deadline which silently passed without notice. Aviall acted promptly to correct the mistake which occurred through inadvertence. Lockheed, on the other hand, knew of its deadline and opted to risk timely delivery by ordinary mail. More important, *Lockheed* did not address inadvertence under section 1520.

## CONCLUSION

The Court of International Trade correctly concluded Aviall inadvertently failed to renew its blanket certification. Section 1520 provides for correction of inadvertent failures to file entry documents. Aviall's oversight was inadvertent. Therefore, section 1520 gave Aviall the opportunity to correct its failure to renew the certification without penalty. Because this court affirms the Court of International Trade based on 19 U.S.C. § 1520, this court has no need to and does not address the issues of validity of 19 C.F.R. § 10.183, and the applicability of 19 C.F.R. § 10.112 and § 141.64 to this case.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

---

\* Specifically, Aviall submitted documentation indicating that an employee of its licensed Customs broker "[f]orgot to obtain renewal of [the certification] ... until he was notified ... that it had expired."