**EXECUTONE INFORMATION SYSTEMS, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 95–1527.

United States Court of Appeals, Federal Circuit.

Sept. 24, 1996.

Michael P. Maxwell, Los Angeles, California, argued, for plaintiff-appellant.

Barbara Silver Williams, Civil Division, Commercial Litigation Branch, Department of Justice, International Trade Field Office, New York City, argued, for defendant-appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, New York City.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MICHEL, Circuit Judge.

Executone Information Systems ("Executone") appeals the final judgment of the

United States Court of International Trade ("CIT") denying Executone's motion for summary judgment, granting the government's motion for summary judgment, and holding that Customs is not required to reliquidate Executone's entries under 19 U.S.C. § 1520(c)(1). *Executone Information Systems v. United States*, 896 F.Supp. 1235 (Ct. Int'l Trade 1995). The appeal was submitted for decision after oral argument on June 6, 1996. Because Executone failed, as a matter of law, to demonstrate a clerical error, mistake of fact or other inadvertence that would entitle it to relief under 19 U.S.C. § 1520(c)(1), we affirm.

## BACKGROUND

Executone is an importer of telephone handsets manufactured in the Dominican Republic and purchased from Q–Tel Parague Industrial Itabo ("Q–Tel"). Executone made an entry of telephone handsets on October 23, 1991 and another on November 4, 1991. As was its usual practice, Executone claimed duty-free treatment for these entries under the Caribbean Basin Economic Recovery Act ("CBERA") by placing the letter "E" before the tariff classification on Customs Form 7501.[1] Thus, the merchandise was entered duty-free under subheading E 8517.10.00, Harmonized Tariff Schedule of the United States ("HTSUS"). At that time, however, importers were required to submit a "Form A" with the entry to certify eligibility for duty-free treatment under CBERA.[2] Alternatively, the importer was required to supply a bond at the time of entry. Executone filed neither a Form A nor a bond for the two entries at issue, although it was Q–Tel's customary practice to submit Form A's to Executone's broker, Radix Group International ("Radix"), in a package with the other commercial documents necessary to file a Customs entry.

In early December of 1991, Customs issued Notices of Action indicating that the entries were in the process of being liquidated under 8517.10.00, HTSUS, at a duty rate of 8.5% *ad valorem*. The Notices of Action also indicated the reason for reclassification at the 8.5% rate as: "No documentation furnished with entry to support duty-free entry under the CBI." Customs liquidated the two entries in December of 1991, and Executone paid the additional duties on January 3, 1992.

Executone, upon learning of the additional duties, requested that Q–Tel send the necessary Form A's to Radix by facsimile, and instructed Radix to file the faxed Form A's with the Customs Service. Although Executone requested that Radix submit the Form A's a total of four times, Radix failed to do so.[3] Executone also requested that Radix file a formal protest with Customs. However, a protest regarding the entries was not filed within 90 days after notice of liquidation as required by 19 U.S.C. § 1514(a) (1994). Finally, in June of 1992, Executone obtained new Form A's and submitted them to Radix for filing. Radix submitted these new Form A's to Customs on July 14, 1992 with a request to reliquidate the entries under 19 U.S.C. § 1520(c)(1). Executone believed the request to reliquidate under section 1520(c)(1) was appropriate because the failure to submit the Form A's on entry was the result of Q–Tel's inadvertent failure to include the Form A's with the other documents shipped to Radix. Customs denied the request to reliquidate. Executone timely protested the denial of its request to reliquidate, and Customs denied the protests because "[n]o supporting documentation other than Form A[was] submitted."

Executone filed a complaint in the CIT in late May of 1994. On October 13, 1994,

1. To be eligible for duty-free treatment under CBERA, the goods "must be produced in a beneficiary developing country ('BDC') by a substantial manufacturing process which substantially transforms the article, have value added in the BDC equaling 35% of dutiable value, and be directly imported from the beneficiary country."

2. This requirement was subsequently eliminated. *See* Treas. Dec. 94–47 (May 17, 1994). However, there is no dispute that the requirement existed at the time the entries at issue occurred.

3. It is unclear precisely why Radix failed to file the Form A's. In its brief, Executone contends that the Form A's were not filed because faxed forms are unacceptable. However, a declaration of Radix's Director submitted on behalf of Executone states that the Form A's were not filed solely due to inadvertence.

Executone filed a motion for summary judgment, and the government cross-moved. The CIT granted the government's cross-motion on July 19, 1995. The CIT first concluded that the determination of whether certain merchandise is eligible for duty-free treatment under programs such as CBERA is a classification dispute and, as such, a legal determination. The CIT also concluded that Customs had made a correct legal determination as to the classification of Executone's merchandise on the basis of the facts presented. The CIT next inquired whether Customs' legal determination resulted from a mistake of fact or inadvertence which could be corrected under section 1520(c)(1).[4] The trial court acknowledged that the alleged mistake of fact or inadvertence need not be manifest in the record before Customs, but rather may be demonstrated at trial by introduction of evidence that explains that which was unsatisfactorily explained to Customs. The court then concluded that, in the case of missing documentation required by statute or regulation, the importer must prove at least that, but for a mistake of fact or other inadvertence, proper documentation would have been filed at the time required by law and that simple failure of the broker to file proper documentation does not satisfy section 1520(c)(1). The trial court concluded Executone was unable to meet this burden.

## ANALYSIS

### A. Standard of Review

■ Summary judgment is proper in the CIT "if the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(d). This court reviews the CIT's summary judgment decision "for correctness as a matter of law, deciding *de novo* the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *Texaco Marine Servs., Inc. v. United States*, 44 F.3d 1539, 1543 (Fed.Cir.1994) (quoting *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed.Cir.1993)).

Two issues are central to the proper determination of this appeal: (1) whether Customs' decision to liquidate the entries at issue resulted from an error in the construction of the law since that alone would prohibit the application of section 1520(c)(1); and (2) whether Executone sufficiently demonstrated "a clerical error, mistake of fact, or other inadvertence."

### B. Customs' decision to liquidate at the 8.5% duty rate is not based on a legal determination and thus cannot be an error in the construction of a law

The government argues that the facts of this case present a mistake of law, and it is undisputed that 19 U.S.C. § 1520(c)(1) does not apply to errors in the construction of the law. Thus, our initial inquiry must be whether Executone has alleged a mistake of law or a mistake of fact.

■ The distinction between mistakes of law and mistakes of fact under section 1520(c)(1) has been defined as follows:

. . . . .

19 U.S.C. § 1520(c)(1) (emphasis added).

The regulation implementing section 1520(c)(1) states:

> Correction pursuant to . . . 19 U.S.C. 1520(c)(1), may be made in any entry, liquidation, or other Customs transaction if the clerical error, mistake of fact, or other inadvertence:
>
> (1) Does not amount to an error in the construction of a law;
>
> (2) Is adverse to the importer; and
>
> (3) Is manifest from the record or established by documentary evidence.

. . . . .

19 C.F.R. § 173.4(b) (1996).

---

4. Specifically, section 520(c)(1) of the Tariff Act of 1930 provides:

> Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct— (1) a clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in electronic transmission, *not amounting to an error in the construction of a law*, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction;

[M]istakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to. Mistakes of law, on the other hand, occur where the *facts are known*, but their *legal consequences* are not known or are *believed to be different than they really are*.

*Hambro Automotive Corp. v. United States*, 66 CCPA 113, 603 F.2d 850, 855 (1979). That the facts of this case, as alleged, present a mistake of fact and not an error in the construction of the law cannot reasonably be disputed, in light of our recent decision in *Aviall of Texas, Inc. v. United States*, 70 F.3d 1248 (Fed.Cir.1995) (*Aviall II* ).[5]

There, Aviall had regularly filed blanket certifications for importations of aircraft engines and parts, but inadvertently allowed the blanket certification to expire. *Aviall II*, 70 F.3d at 1249. When notified by Customs that the certification had expired, Aviall immediately renewed it. *Id.* However, in the interim, Aviall continued to import engine parts. *Id.* Customs liquidated the interim entries several months later and denied duty-free treatment due to Aviall's failure to timely renew the certificate. *Id.* Aviall protested on the ground that its failure to renew was a clerical error correctable pursuant to section 1520. *Id.* The CIT determined that Aviall presented a mistake of fact rather than a mistake of law and determined that Aviall's failure to renew the certification was inadvertent. *Aviall of Texas, Inc. v. United States*, 18 CIT 727, 861 F.Supp. 100, 107 (1994) (*Aviall I* ). In so doing, the CIT noted that:

> In the statement of material facts, the admissions of Aviall's broker disclose that the failure to file a new yearly blanket certification was due to the fact that the broker "forgot" to renew the blanket certification for the period encompassing these entries. The situation of Aviall and its broker, therefore, falls precisely within the

language of *C.J. Tower*: "[A] fact which is thought to exist [existence of a valid annual certification], in reality [did] not exist."

*Aviall I*, 861 F.Supp. at 107 (alteration in original). Although the only issue specifically addressed on appeal was whether Aviall's conduct constituted inadvertence or unexcusable negligence, we specifically noted that section 1520(c)(1) could not be used to correct a mistake in the construction of the law, 70 F.3d at 1250, thus implicitly accepting the determination of the CIT that the case presented a mistake of fact. Here too, Executone has alleged a mistake of fact: namely, Executone believed, at the time of importation, that valid Form A's had been filed when, in fact, they had not.

Our conclusion today is further supported by our previous decision in *ITT Corp. v. United States*, 24 F.3d 1384 (Fed.Cir.1994) (*ITT Corp. II* ). There, ITT imported cast-iron automobile parts, which Customs liquidated at a rate of 3.1%. 24 F.3d at 1386. Within one year after liquidation, ITT filed claims with Customs pursuant to 19 U.S.C. § 1520(c)(1) seeking reliquidation of each entry as duty-free based on new evidence indicating the castings were improperly classified and alleging that a mistake of fact occurred in the initial creation of the broker's records which resulted in the subsequent misclassification of the entries. *Id.* Customs denied the requests on the ground that the errors involved the construction of the law and denied ITT's protests of the denials. *Id.* The CIT disagreed with Customs and held that ITT presented a mistake of fact because, when filling out the forms, the importer's agent used company records applicable to different merchandise and misunderstood the nature of the imported merchandise. *ITT Corp. v. United States*, 17 CIT 26, 812 F.Supp. 213, 216 (1993) (*ITT Corp. I*). However, the trial court held ITT was not entitled to relief because it failed to

---

**5.** At oral argument, counsel for the United States contended that *Aviall II* was not applicable because it did not present a 19 U.S.C. § 1520(c)(1) issue. We find no merit in this argument. While it is true that Aviall actually filed a protest rather than a request for reliquidation, Aviall based its protest on a clerical error as defined in 19 U.S.C. § 1520(c)(1) and the case was analyzed under

that statute. Indeed, the introductory paragraph to that opinion states "[u]nder 19 U.S.C. § 1520(c)(1) (1988) (amended 1993), the trial court permitted Aviall to renew its blanket certification for entry of aircraft parts. Because the Court of International Trade properly applied section 1520(c)(1), this court affirms." 70 F.3d at 1248.

establish the mistake of fact before the reliquidation determination. *Id.* 812 F.Supp. at 217. In reviewing the CIT's decision, we focused on the requirements of notice to Customs and substantiation, but also noted that the government did not contest the CIT's finding that a mistake of fact had occurred and that the finding was amply supported by the record and not clearly erroneous. *ITT Corp. II,* 24 F.3d at 1388.[6]

The government argues that assertions such as Executone's are challenges to Customs' classification of merchandise and that such classification determinations are conclusions of law which may only be addressed by timely protesting the liquidation. In stating its position, however, the government relies solely on decisions of the CIT. While these decisions admittedly provide some support for the government's theory, each of the decisions not only is non-binding, but also is readily distinguishable on its facts from the case at bar.

First, the government relies primarily on *Occidental Oil & Gas Co. v. United States,* 13 CIT 244, 1989 WL 30441 (1989). There, Occidental claimed certain oil well equipment importations were entitled to duty-free treatment because the equipment consisted of returned goods of American origin. *Id.* at 244–45. However, Occidental failed to file proof of United States origin. *Id.* at 245. Customs repeatedly notified Occidental that proof of origin had not been received and then eventually liquidated the merchandise as dutiable. *Id.* Occidental filed a request for reliquidation under 19 U.S.C. § 1520(c)(1), which request was denied by Customs. *Id.* Occidental also filed a protest of Customs' denial of its request for reliquidation, which was also denied. *Id.* The CIT held that reliquidation pursuant to 19 U.S.C. § 1520(c)(1) was not appropriate where duty-free entry was denied solely because the importer failed to submit documentation in support of its claim for duty-free treatment. In so deciding, the court stated:

> The courts have consistently held that section 1520(c)(1) may only be used to correct mistakes of fact or inadvertence and may not be used to rectify allegedly incorrect interpretations of the law.... It is well settled that a determination by the Customs Service that merchandise is covered by a certain provision of the TSUS is a conclusion of law. Therefore, an erroneous classification of imported merchandise is not remedial as a clerical error, mistake of fact or inadvertence under section 1520(c)(1).

*Id.* at 246–47 (citations omitted). Although, taken in isolation, this language may support the government's position, a close reading of this decision reveals that, as a whole, the decision is not contrary to our decision today because Occidental was never under a mistaken impression of fact. Rather, Occidental had acknowledged on the entry form that it had not provided the necessary documentary proof to establish a right to duty-free entry. In addition, Occidental mistakenly believed that under the law its prompt and reasonable efforts to obtain the documentation excused its failure to file such documentation. *Id.* at 245–46. Thus, Occidental's mistake was not one of fact, but truly one of law. As this appeal presents a mistake of fact, *Occidental* cannot apply here.

Second, the government also relies on *Cavazos v. United States,* 9 CIT 628, 1985 WL 25792 (1985). In *Cavazos,* as in *Occidental,* the importer requested duty-free treatment on the entry form, claiming that the goods were American made, but failed to provide documents supporting its claim of duty-free status. 9 CIT at 629. The CIT held Cavazos failed to state a claim for relief under section 1520(c)(1) because Cavazos' allegation of a mistake of fact was really a challenge to

---

6. We note also that our decision conforms with *United States v. C.J. Tower & Sons of Buffalo Inc.,* 61 CCPA 90, 499 F.2d 1277 (1974). There, aircraft fuel cells were imported from Canada and entered as dutiable. *Id.* at 1278. The importer later requested that the fuel cells be reliquidated under section 1520(c)(1) because the importer had not been aware that the fuel cells could be imported duty-free as an emergency defense purchase. *Id.* at 1279. The government contended that the importer made an error in the construction of the law by failing to timely protest the original liquidation. *Id.* at 1282. The CCPA dismissed this argument, stating there was a mistake of fact in that the importer did not know the fuel cells were emergency war material even though, in fact, they were. *Id.*

Customs' legal determination. *Id.* at 631. Once again, this case is readily distinguishable; Cavazos apparently did not argue that he mistakenly thought the appropriate documents had been filed, but only that Customs had incorrectly classified the merchandise.

Third, the government relies on *AT & T Int'l v. United States,* 18 CIT 721, 861 F.Supp. 95 (1994). There, AT & T claimed duty-free treatment for telephone parts and equipment which were manufactured in the United States and returned from Egypt as defective. 861 F.Supp. at 96. However, once again, the importer failed to submit evidence supporting its claim of duty-free status at the time of entry. *Id.* After giving AT & T notice of the deficiency and a chance to correct it, Customs liquidated the entries. *Id.* AT & T timely filed a request to reliquidate, alleging that the documents were not submitted due to clerical error or inadvertence. *Id.* at 96–97. In holding that AT & T had failed to present an actionable clerical error, mistake of fact or inadvertence, the court analogized to both *Cavazos* and *Occidental* and quoted the language in *Occidental* indicating that Customs had made a legal determination. *Id.* at 99–100. Although, based on a superficial reading of this decision, one could find support for the government's position, a close reading demonstrates that the trial court did not deny relief on the ground that the importer was alleging an error in the construction of the law, but rather on the grounds that the importer had failed to meet its burden of showing either inadvertence or a mistake of fact.

In short, we are not persuaded of the applicability of any of the three decisions relied on by the government or the CIT. We first note that this appeal does not present a typical challenge to a Customs classification where Customs evaluated the merchandise and, based on its construction of the tariff schedule, determined into which of two categories the merchandise must be placed, *e.g.,* whether a pager should be classified as a radio receiver or as a signaling apparatus. In such a case, there is no dispute that the only proper course of action would have been to file a timely protest under section 1514. Rather, Customs has never disputed that

Executone's merchandise would properly qualify for duty-free treatment under CBERA had Form A's been properly submitted. Moreover, as pointed out by Executone, accepting the government's argument that this case involved a mistake of law would lead to the absurd result that section 1520(c)(1) could never be used to correct a liquidation because then all liquidations would involve a question of law. Executone argues, persuasively, that each erroneous liquidation may result from a mistake of law (*e.g.,* whether the proper meaning of specific terms in the tariff provision have been correctly determined or whether a given type of royalty is included in dutiable value) or a mistake of fact (*e.g.,* whether the importer erroneously described the merchandise on the invoice used to prepare the entry or misplaced a decimal point on an invoiced price resulting in an incorrect value).

Moreover, our decision today follows both of our earlier decisions, discussed above. In contrast to the three CIT cases cited by the government, these decisions are binding precedent and they are factually apposite. Here, based on the facts as alleged, the classification of Executone's merchandise at an 8.5% *ad valorem* rate was clearly the result of a mistake of fact variety—Executone thought Form A's had been filed when, in fact, the forms had not been. This is precisely the type of error which is properly correctable through the application of 19 U.S.C. § 1520(c)(1).

C. *Executone, however, has not demonstrated a mistake of fact, clerical error or other inadvertence*

As, despite the government's argument, we hold that the facts of this case do not present the type of legal mistake expressly excluded from consideration under 19 U.S.C. § 1520, we must next decide whether Executone has sufficiently demonstrated, rather than merely alleged, "a clerical error, mistake of fact, or other inadvertence" as those terms are used in section 1520(c)(1). In applying that section, the trial court explained:

> In order to protect the viability of protest under 19 U.S.C. § 1514 and whatever documentary requirements exist in the statute

and regulations, the court concludes that in the case of missing documentation required by statute or regulation, the importer must prove more than that it can produce documentation at the time of trial. At the very least, the importer must prove that, but for a mistake of fact or other inadvertence, proper documentation would have been filed *at the time required by law.* Simple failure of the broker to file proper documentation does not satisfy § 1520(c)(1).

Plaintiff does not allege it can meet the burden described here. It had ample opportunity to demonstrate proof of origin in a timely manner, and it does not claim that proper documentation existed at the time of entry and would have been filed but for an inadvertence. Plaintiff's attempts to jury rig the proper documentation do not suffice. Under the facts of this case, to allow filing of proof of origin now, or even within one year of liquidation, would render a nullity the then-existing requirement that proof of entry be filed at entry or that a bond be posted and the proof be filed 60 days later.

(citations omitted).

■ Executone contends on appeal that the trial court effectively held that, in order to fulfill its burden, Executone must allege that the required documentation had been prepared at the time of entry. If this were truly what the trial court intended, it would clearly be incorrect and inconsistent with our previous decisions. For example, such a holding would be inconsistent with *ITT Corp. II,* where we held that an importer could present proof of inadvertence or mistake at any time up to trial, and in which only incorrect documentation was in existence at the time of entry. 24 F.3d at 1386. Such a holding would also be inconsistent with *Aviall II,* because in that case the only document that existed at the time of entry was out of date. 70 F.3d at 1248. Thus, it cannot be the law that proper documentation must exist at the time of entry.

We agree with the government that the CIT's decision is only fairly read as holding that an importer must show that its failure to submit documentation on a timely basis was due to inadvertence, rather than merely showing it failed to submit the documentation. This is a more reasonable interpretation of the trial court's opinion and is legally supportable under the existing precedent.

Indeed, *ITT Corp. II* holds that reliquidation under section 1520(c)(1) requires both notice of the alleged mistake of fact or inadvertence and substantiation. 24 F.3d at 1387. The notice must occur within one year of liquidation and must inform Customs that a mistake of fact or inadvertence is being asserted with sufficient particularity to allow remedial action. *Id.* With regard to substantiation, the inadvertence or mistake of fact must be either manifest from the record, *i.e.,* "apparent to Customs from a facial examination of the entry and the entry papers alone," or it must be established by documentary evidence. *Id.* The latter proof of inadvertence or mistake of fact may be proven after the expiration of the one year period, such as at a trial *de novo. Id.* at 1388–89. Thus, while the proper documentation need not have existed at the time of entry, the importer must prove, either before Customs or the CIT, that the proper documentation did or would have existed at the time of entry and would have been filed, but for some mistake of fact or inadvertence at the time of entry.

■ Under this interpretation of the trial court's opinion, the trial court's determination that Executone failed to demonstrate "a clerical error, mistake of fact, or other inadvertence" is legally correct in light of the very limited proof introduced by Executone.[7] While it may be true that Executone's intention to claim duty-free status is manifest from the entry records, it is not manifest from the entry records that Executone's failure to submit the Form A's was due to a mistake of fact or inadvertence, rather than due to intentional or negligent inaction. *See*

---

7. It is undisputed that Executone notified Customs of the alleged mistake of fact or inadver-

tence within the one year period.

*ITT Corp. II*, 24 F.3d at 1387. Further, Executone has failed to submit subsequent documentary evidence sufficient to prove a clerical error, mistake of fact or other inadvertence. Executone's "proof" below consisted of: (1) the contention that inadvertence is, by its very nature, difficult to document; (2) Executone's course of conduct with respect to the entries of telephone handsets that occurred both before and after the entries at issue; (3) a declaration of Pam Osterland (Director of Radix) with several attached exhibits; and (4) the contention that accurate Form A's have now been submitted. However, Executone made no attempt to explain what constituted the inadvertence, mistake of fact or clerical error, but merely stated such an inadvertence, mistake of fact or clerical error had occurred. We do not accept such conclusory allegations, which do nothing more than track the language of the relevant statute. *See Degussa Canada Ltd. v. United States,* 87 F.3d 1301, 1303 (Fed.Cir.1996) (citing *Fabrene, Inc. v. United States,* 17 CIT 911, 913, 1993 WL 328032 (1993)).

Likewise, Executone makes no attempt to explain why it failed to file Form A's until after the time for filing a protest had lapsed. Executone's "proof" of inadvertence falls woefully short and, if anything, establishes only that Executone acted negligently. Executone repeatedly asked Radix to file the Form A's. Radix, however, failed to do so. From the evidence currently in the record, it appears that Radix employees negligently failed to carry out Executone's instructions and Executone negligently failed to ensure that its agent timely filed the Form A's. Executone, by repeating its request, obviously knew the forms had not yet been filed, yet failed to act.

## CONCLUSION

For all the foregoing reasons, the decision is affirmed.

*AFFIRMED.*