**CENTURY IMPORTERS, INC.,**
**Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant–**
**Appellant.**

No. 99–1117.

United States Court of Appeals,
Federal Circuit.

March 3, 2000

Rehearing and Rehearing En Banc
Denied May 10, 2000.

Rufus E. Jarman, Jr., Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellee. With him on the brief was Frederic D. Van Arnam, Jr.

Barbara M. Epstein, Attorney, International Trade Field Office, Department of Justice, New York, New York, argued for defendant-appellant. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Joseph M. Sparagen, Attorney Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of New York, New York.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

RADER, Circuit Judge.

The United States Customs Service (Customs) assessed duties based on the invoice value of beer imported by Century Importers, Inc. (Century). The Canadian exporter later reimbursed Century for the duties. On summary judgment, the United States Court of International Trade agreed with Century that Customs erred by failing to deduct the reimbursed duties from the transaction price as indicated by the importer's invoice. *Century Importers, Inc., v. United States*, 19 F.Supp.2d 1124 (Ct. Int'l Trade 1998). Because the Court of International Trade erred in its interpretation of 19 U.S.C. § 1401a (1994),* which governs the valuation of imported merchandise for appraisal by Customs, this court vacates and reverses.

I.

Century is a wholly owned importing subsidiary of the Miller Brewing Company of Milwaukee, Wisconsin (Miller). On January 14, 1993, Miller entered an agree-

* All subsequent code references will be to sections of title 19.

ment (the Beer Agreement) with Molson Breweries of Toronto, Ontario, Canada (Molson), which covered the importation, sale, advertising, and distribution of beer. Exhibit 9(j) of the Beer Agreement, titled "Calculation and Payment of Transfer Prices," set the formula for calculating the price of Molson's beer. This price—the "transfer price"—included production, overhead, packaging, and shipping costs. Exhibit 9(j) also included tariffs, levies, taxes, and duties under "packaging costs" to be invoiced separately. The parties to the agreement treated these tariffs and duties as Molson's costs, which Molson would invoice separately to Miller. Because these tariff and duty costs appeared on a separate invoice, the parties did not count the duties in the price of the beer.

When Molson and Miller began to negotiate the Beer Agreement, the duty for beer imported from Canada was a specific (i.e., volume-based) rate under one cent per liter. During the negotiations, however, as a result of a trade dispute, the United States replaced the specific duty rate for beer imported from the Province of Ontario with a rate based upon value. This *ad valorem* rate was fifty per cent of the value of the imported product. Molson and Miller agreed, in a side letter headed "Import Duties" accompanying the Beer Agreement, that Molson would "pay or reimburse" Miller and its affiliates for the cost of these duties.

When Century later imported Molson beer, Customs assessed fifty per cent ad valorem duties based on the price stated on the invoices or bills. The invoices did not contain any statements about subsequent duty reimbursements. Customs assessed the duty based on the sales invoice price. Century paid the duty to Customs. Later Miller billed Molson for the duties, and Molson reimbursed Miller (and Century) the billed amount.

Century brought an action in the Court of International Trade seeking a refund of part of the duties it paid, contending that Customs, in calculating the duties on the imported beer, should have deducted the reimbursed duties from the invoice price. In essence, Century argued that Molson had in reality reduced the price of its beer by agreeing to reimburse Miller for the duties. Molson had recovered, Century argued, only the invoice price minus the reimbursed duties. Therefore, Century contends that this reduction in the invoice reflects the value of the transaction.

Customs contends that it calculated the duty on the basis of 19 U.S.C. § 1401a(b)(1) which sets the "transaction value," the basis for the duty calculation, at "the price actually paid or payable for the merchandise." Customs contended that the price "actually paid" for the beer was the invoice price. According to Customs, Molson's reimbursement was a rebate. Customs treated this alleged rebate according to the statutory formula: a "rebate of, or decrease in, the price actually paid ... after the date of the importation ... shall be disregarded in determining the transaction value." § 1401a(b)(4)(B). Customs acknowledges that the transaction value would not include customs duties "if identified separately from the price actually paid." 19 U.S.C. § 1401a(b)(3)(B). Customs notes, however, that neither Molson nor Century separately identified at importation the customs duties later reimbursed by Molson.

Century and Customs cross-moved for summary judgment. The Court of International Trade granted Century's motion, holding that the invoice price included a component for duties which Customs should have deducted before it assessed duties. Further, the trial court reasoned that repayment of duties to the importer after importation is not a "rebate in price" within the meaning of the statute. *See Century*, 19 F.Supp.2d at 1126. Therefore, the Court of International Trade held that Molson's failure to identify separately the reimbursement agreement was a ministerial error which the parties could later correct. *See id.* at 1127. The Government now appeals the decision of the Court of International Trade.

## II.

■■■■ This court reviews a grant of summary judgment by the Court of International Trade for correctness as a matter of law. *See Campbell Soup Co., Inc. v. United States,* 107 F.3d 1556, 1559 (Fed. Cir.1997); *St. Paul Fire & Marine Ins. v. United States,* 6 F.3d 763, 767 (Fed.Cir. 1993). When reviewing a decision by the Court of International Trade, this court reapplies the standard initially exercised by the trial court to review the agency decision. *See Campbell,* 107 F.3d at 1559. The decision of Customs receives a presumption of correctness which the importer has the burden to overcome. *See id.;* 28 U.S.C. § 2639(a)(1) (1994). This presumption is only a procedural device which allocates the burden of producing sufficient evidence. *See Universal Electronics v. United States,* 112 F.3d 488, 492–93 (Fed. Cir.1997).

Title 19 authorizes Customs to determine the value of imported merchandise. *See* 19 U.S.C. § 1500(a) (1999). According to title 19, Customs appraises imports "on the basis of ... (A) The transaction value provided for under subsection (b) of this section." § 1401a(a)(1). Transaction value is the "price actually paid or payable for the merchandise." § 1401a(b)(1). Two further provisions inform the meaning of the "price actually paid or payable." Title 19 uses that phrase again in excluding rebates from the transaction value: "[a]ny rebate of, or other decrease in, the **price actually paid or payable** that is made or otherwise effected between the buyer and seller after the date of the importation ... shall be disregarded in determining the transaction value ...." § 1401a(b)(4)(B)(emphasis supplied). Again, title 19 uses the phrase in excluding from transaction value several items when identified separately from the price: "[t]he transaction value ... does not include any of the following, if identified separately from the **price actually paid or payable** .... (B) The customs duties ... currently payable on the imported merchandise by reason of its importation ...." § 1401a(b)(3)(B) (emphasis supplied).

These provisions show that title 19 makes the transaction value a touchstone for valuation of imports. Transaction value or "the price actually paid or payable" is "the total payment ... made, or to be made, for imported merchandise by the buyer to ... the seller." § 1401a(b)(4)(A). From this touchstone, title 19 authorizes deductions "for transportation, insurance, and related services incident to the international shipment of the merchandise." *Id.* Those deductions are not at issue in this case. Title 19 also enumerates other costs that Customs must exclude from transaction value, but only if they were identified separately from the price actually paid or payable. These costs include "[t]he customs duties and other Federal taxes currently payable on the imported merchandise." § 1401a(b)(3)(B). According to title 19, the transaction value, the touchstone of duty calculation, does not include customs duties payable upon importation, if identified separately from the price actually paid.

■■■■ Applying the statutory formula to this case, § 1401a(b)(3) explicitly excludes customs duties from the transaction value if identified separately to Customs. Therefore, because the record shows that the parties did not identify these duties separately, Customs has no authorization to deduct them from the price calculation. Beyond this straightforward application of the statute to this case, title 19 supplies further confirmation for Customs' refusal to deduct the duties from the transactional value. Because Molson reimbursed the duties after the date of importation, that post-importation action was in fact a rebate. *See Black's Law Dictionary* 1266 (6th ed.1990). Section 1401a(b)(4)(B) directs Customs to disregard rebates after the date of importation. Thus Customs properly appraised the merchandise at the invoiced unit prices.

Miller paid an invoiced transfer price to Molson for its beer. In the agreement, this price was calculated without reference to any duties. Based on that "price actual-

ly paid" Miller paid duties on the beer to Customs. Thus the Court of International Trade correctly recognized that the Beer Agreement "resulted in a price (known as the 'Transfer Price') which was to be the same from Miller's point of view, no matter what the duty rate." *Century*, 19 F.Supp.2d at 1124. The trial court erred by examining the transaction from Molson's perspective after importation and payment of the rebate: "[f]rom Molson's point of view, what it actually received in payment was going to change depending on the duty paid." *Id.* Title 19 does not require Customs to discern a difference between the fixed sum paid by Miller to Molson and the variable sum received from Miller by Molson. Rather, title 19 directs that "[a]ny rebate of, or other decrease in, the price actually paid or payable that is made or otherwise effected between the buyer and seller after the date of importation ... shall be disregarded in determining the transaction value." *See* § 1401a(b)(3). Therefore, the Court of International Trade erred in finding that the "transfer price" was a "duty-paid" price, i.e., that the price included duties upon which duties could not be charged according to § 1401a(b)(3)(B).

## III.

█ In the declaration of its Import Specialist, Customs acknowledges that it might well have reached a different appraisal if it had been informed of the duty rebates at the time of importation. The Court of International Trade considered this omitted notice a simple error in the preparation of the entry papers and thus considered it remediable under 19 U.S.C. § 1520(c)(1) (1994), which states:

> [A] clerical error, mistake of fact, or other inadvertence ... not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, [may give rise to a refund] when the error, mistake, or inadvertence is brought to the attention of the Customs

Service within one year after the date of liquidation.

The Court of International Trade read § 1520 to give Miller a year to correct its failure to identify the "duty paid" invoice at the time of importation. To the contrary, § 1520 does not apply to this case.

Century's repeated failure to mark its documents "duty paid" falls outside the allowance for correction under § 1520(c)(1). Section 1520 extends a correction chance to "a clerical error, mistake of fact, or **other inadvertence**." (Emphasis supplied.) A correctable inadvertence under § 1520(c)(1) is easy to recognize because it is commensurate with, as the statute states, a "clerical error" or a "mistake of fact." In *Aviall of Texas, Inc. v. United States*, 70 F.3d 1248 (Fed.Cir.1995) this court acknowledged a correctable inadvertence when the importer did not file certifications for duty-free import for one year. Because the importer had correctly filed these certifications for the eight previous years, and rectified his error for the ninth year immediately upon notification, this court concluded that the importer's error in the ninth year was a correctable "mistake which occurred through inadvertence." *Id.* at 1251. This court discerned in *Aviall* that a fact that was thought to exist (the certification) did not, in reality, exist.

The facts in *Executone Information Systems v. United States*, 96 F.3d 1383 (Fed.Cir.1996) illustrate an uncorrectable inadvertence. In that case, this court found that the importer had repeatedly failed to file documentation required for duty-free import, and also failed to show that this failure was due to a "mistake of fact or inadvertence," rather than "intentional or negligent inaction." *Executone*, 96 F.3d at 1389. *Century* is similar to *Executone* in that the importer repeatedly did not properly document its imports as "duty-paid." None of the four invoices of July 29, 1993, were marked duty-paid. Moreover, Century did not mark invoices over the entire period from April, 1993

(when the Miller–Molson agreement went into effect) to August 5, 1993 (when the fifty per cent duty was removed). Also, in its appeal to this court, Century did not demonstrate that this failure was due to a mistake of fact or inadvertence. Therefore *Century* falls within the rule of *Executone*.

▮ Century's course of conduct with respect to the entries that occurred both before and after the entries at issue is relevant in demonstrating that its error is one of law. *See Executone*, 96 F.3d at 1390. The repetition of "inadvertence" may indicate an advertent misunderstanding of the law. In this case, Century's repeated failures to provide notice of the duty arrangements over a period of at least four months do not qualify as inadvertent clerical errors or as inadvertent mistakes of fact. Century might well have known that it was not marking its import documents "duty paid," but not have known it was operating under a misapprehension of the law. To use an alternative label, Century acted negligently. "[I]nadvertence does not stretch so far as to encompass intentional or negligent inaction." *Ford Motor Co. v. United States;* 157 F.3d 849, 860 (Fed.Cir.1998) (citing *Aviall,* 70 F.3d at 1250 and *Executone*, 96 F.3d at 1389–90). Century's failure to provide notice falls outside the scope of inadvertence correctable under 19 U.S.C. § 1520(c)(1).

▮ Correction is not possible if the error is one in the construction of law. *See Aviall,* 70 F.3d at 1250; see also, 19 C.F.R. § 173.4 ("Correction pursuant to

... 19 U.S.C. [§ ] 1520(c)(1), may be made ... if the clerical error, mistake of fact, or other inadvertence ... [d]oes not amount to an error in the construction of a law."). Mistakes of law occur where the facts are known but their legal consequences are not, or are believed to be different than they really are. *See Executone*, 96 F.3d at 1387. Thus, misunderstanding or ignorance of the law does not qualify as a correctable inadvertence under § 1520.

## IV.

Because the Court of International Trade mistakenly interpreted the Century's import transactions to be duty-paid imports, improperly assessed by Customs due to remediable error on the part of the importer, it erred in its grant of summary judgment. This court therefore vacates the grant of summary judgment to Century and reverses the denial of summary judgment to the United States.

## COSTS

Each party shall bear its own costs. ·

*VACATED and REVERSED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. The Court of International Trade properly granted Century its statutory[1] right to correct the omission of notice of the "duty paid" status of the imported goods on its July 29, 1993 invoices. It is inappropriate, and incorrect, for this court to revoke that statutory right of correction.

---

1. **19 U.S.C. § 1520(c)(1).**

   A clerical error, mistake of fact, or other inadvertence ... not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction [may give rise to a reliquidation or a reconciliation] when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation.

The Customs Service readily acknowledged that it would have assessed the duty as Century proposes, and as required by § 1401a(b)(3),[2] had it been advised that the invoice price included the duty. That the invoice itself did not so state was surely an error, mistake, or inadvertence as contemplated by § 1520(c)(1). It is not disputed that the error, mistake, or inadvertence was unintentional. The Court of International Trade found that this was "an error in the preparation of the entry papers, so that the duty-paid nature of the price was not indicated at entry." An error in designation of a "duty paid" import transaction on the invoice is the kind of error for which Congress authorized correction.

The Customs usage of the term "duty paid" does not mean that the duty has already been levied and separately paid; it means that the invoice price includes the duty. When Customs is notified that goods are "duty paid" it assesses the duty accordingly, thus avoiding the levy of a duty on a duty.[3] The excess duty here levied was an improper assessment based on error and inadvertence, as was found by the Court of International Trade on the evidence. The error was not made by the Customs Service, but by the parties to the importation. Customs Agent Ryan testified that he was told of the duty arrangement "in mid '93," but that the liquidation did not take account of it because it was not on the invoice. The importer sought correction within a few days after the incorrect liquidation. Congress authorized the liberal correction of such errors, recognizing the complexities of international trade and the public interest in just and correct assessments.

The majority opinion postulates that the error made by the parties was "negligently" repeated, transforming an otherwise correctable inadvertence into a non-correctable penalty. The decision before us relates to four invoices dated July 29, 1993 for four apparently concurrent shipments. There is no allegation of egregious inattention, as contrasted with simple error. Indeed, I wonder why an error becomes uncorrectable if made more than once. The request to correct the error and inadvertence was made promptly. Precedent well supports the correction of such errors. For example, in *Aviall of Texas, Inc. v. United States*, 70 F.3d 1248, 1249 (Fed.Cir. 1995) the failure to file an import certification was found by this court to be correctable. In *Executone Information Systems v. United States*, 96 F.3d 1383 (Fed.Cir. 1996) the court held that the failure to furnish documentation supporting a claim of duty-free entry would have been correctable but for the importer's "intentional or negligent inaction." *Id.* at 1389. The Customs Service has not charged that there was intentional or negligent inaction in this case. The panel majority's spontaneous fact-finding to this effect is unsupported by evidence.

The panel majority also classifies the arrangement between Miller and Molson as a post-importation "rebate." It was not a rebate[4]—it was a simple agreement that

---

2. **19 U.S.C. § 1401a(b). Transaction value of imported merchandise.**

   \* \* \* \* \* \*

   (3) The transaction value of imported merchandise does not include any of the following, if identified separately from the price actually paid or payable . . .

   \* \* \* \* \* \*

   (B) The customs duties and other Federal taxes currently payable on the imported merchandise by reason of its importation. . . .

3. The transaction value of the goods is calculated by dividing the "duty paid" price by 100% plus the duty rate. As an example,

assume that the invoice price of the importation here at issue is $12. Since the duty rate is 50%, the transaction value of the goods is $12 divided by 150%; the transaction value is thus $8, and the duty is $4. Since Customs was not advised of the "duty paid" status this adjustment was not made; thus the importer paid a higher value for the goods, and Customs collected a duty on a duty, for a total duty of $6 in the example.

4. REBATE, n. A return of part of a payment, serving as a discount or reduction. Blacks Law Dictionary 1273 (7th ed.1999).

the exporter would pay the customs duty, the agreement stating that "Molson will promptly pay or reimburse [Miller] for the cost of the retaliatory import duties affecting imports of Canadian beer into the United States...." It is thus inapt to rely on § 1401a(b)(4)(B) (authorizing Customs "to disregard rebates after the date of importation") as authorizing the admittedly incorrect levy and barring its correction.

The refusal of the majority of this panel to permit the statutory right of correction in this case is inappropriate, unjust, and contrary to law.