**Slip-Op. 02-94**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: Judge Judith M. Barzilay**

|  |  |
|---|---|
| **x** | |
| : | |
| XEROX CORPORATION | : |
| | : |
| Plaintiff, | : |
| | : Court No. 99-02-00086 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant | : |
| | : |
| **x** | |

[Defendant's motion for summary judgment granted in part and denied in part; Plaintiff's motion for summary judgment denied.]

Decided: August 22, 2002

*Neville Peterson LLP, John M Peterson, (Curtis W. Knauss),* for Plaintiffs.

*Robert D. McCallum, Jr.*, Assistant Attorney General, United States Department of Justice; *John J. Mahon*, Acting Attorney in Charge, International Trade Field Office; (*Barbara M. Epstein, Amy M. Rubin*), Civil Division, United States Department of Justice, Commercial Litigation Branch; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Services, of Counsel, for Defendant.

**OPINION**

**BARZILAY, JUDGE:**

**I. INTRODUCTION**

This case is before the court on cross-motions for summary judgment. Plaintiff

("Xerox"), a domestic importer, challenges Defendant's ("Customs" or "Government") denial of

its petition to reliquidate twelve entries of Xerox merchandise under 19 U.S.C. §

1520(c)(1)(1994).[1]  Defendant moves for summary judgment, alleging that Plaintiff's incorrect

entry of the merchandise was a "mistake of law," which is not remediable under § 1520(c)(1), as

the entry-writer was mistaken as to the correct classification of the merchandise, but knew the

nature and capabilities of the merchandise and, furthermore, that Plaintiff lacks evidence to

prove that the classification was due to "mistake of fact," inadvertence, or clerical error.

Plaintiff cross-moves claiming that the classification was a "mistake of fact," as the entry-writer

was misled by the invoice accompanying the merchandise and was unaware of the actual

physical nature and capabilities of the merchandise, and, alternatively, that the customs broker

failed to protest misclassified entries due to reliance on a faulty database.  The court grants

Defendant's motion for summary judgment in part and denies it in part, and denies Plaintiff's

motion for summary judgment, as it finds material facts at issue regarding the entry procedures

used by Plaintiff's custom broker as discussed below.

---

[1] § 520(c)(1) of the Tariff Act, codified at 19 U.S.C.§ 1520(c)(1) allows reliquidation for entries incorrectly classified due to "mistake of fact," inadvertence, or clerical error.  The text reads:

(c) Reliquidation of entry or reconciliation

Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct–

(1) a clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in electronic transmission, not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction;

## II. BACKGROUND

From May through September 1995, Xerox imported multi-function printers consisting of "MajestiK" models 5760, 5760 ADF, and 5765 and "Regal"model 5790.[2] *Def.'s Statement of Material Facts Not in Issue*, at ¶ 7, 9 ("*Def.'s Statement*"); *Pl.'s Resp. to Def.'s Statement of Material Facts Not in Issue*, at ¶ 7,9 ("*Pl.'s Resp.*").  The merchandise entered through the Port of Los Angeles, California.  *Mem. In Supp. of Def. Mot. For Summ. J.* at 2.  Xerox's designated customhouse broker at this port is A.J. Fritz Companies ("Fritz"), as Associated Customhouse Brokers, Inc. ("ACB" or "Associated"), Xerox's principal customhouse broker, does not have an office in Los Angeles.  *Id.* at 5.  Jared Hirata, entry writer at Fritz, classified the entry of the merchandise under subheading 9009.12.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").[3]  *Deposition of Nathan Reep ("Reep Dep.")* at 20.  Between September 1995

---

[2] Xerox submitted the following entries for reliquidation:

| Entry Number | Entry Date | Liquidation Date |
| --- | --- | --- |
| 110-0060152-4 | 5/17/95 | 9/8/95 |
| 110-0060198-7 | 5/25/95 | 9/15/95 |
| 110-0060292-8 | 6/12/95 | 10/6/95 |
| 110-0060359-5 | 6/21/95 | 10/6/95 |
| 110-0060362-9 | 6/22/95 | 10/20/95 |
| 110-0060534-3 | 7/19/95 | 12/1/95 |
| 110-0060611-9 | 8/3/95 | 12/1/95 |
| 110-0060765-3 | 8/30/95 | 12/15/95 |
| 110-0060704-2 | 8/16/95 | 12/1/95 |
| 110-0060778-6 | 8/29/95 | 12/15/95 |
| 110-0060808-1 | 9/6/95 | 12/22/95 |
| 110-0060865-1 | 9/21/95 | 1/19/96 |

*Def.'s Statement* at ¶ 7,9; *Pl.'s Resp.* at ¶ 7,9.

[3] The text of HTSUS 9009.12.00 reads:

```
9009      Photocopying apparatus incorporating an optical
          system or of the contact type and thermocopying
          apparatus; parts and accessories therof:
               Electrostatic photocopying apparatus:
```

and January 1996, Customs liquidated the merchandise under this heading at 3.7% *ad valorem*.

*Pl.'s Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J.* ("*Pl.'s Br.*"), *at* 1-2. In

December 1995 and February 1996, Xerox pursued a Customs' ruling on the correct

classification of the "Regal" and "MajestiK" models, respectively. See *New York Customs*

*Ruling 817475 of December 22, 1995* ("*NY Customs' Ruling 817475*"); *New York Customs*

*Ruling A80061 of February 14, 1996* ("*NY Customs Ruling A80061*").

Prior to Customs' ruling, on July 17, 1995, Mr. Graham Cassano, Corporate Manager for

Customs and Tariff administration at Xerox, issued a letter instructing Mr. Glenn Levitt of ACB

to enter these models under subheading 8471.92.5400[4] with duty-free status and to protest any

entries previously entered under 9009.12.00. *Letter from Cassano to Levitt of 7/17/95.* The

---

```
* * * *

9009.12.00              Operating by reproducing the original
                        image via an intermediate onto the
                        copy (indirect process). . . . . . .3.7%
```

[4] The text of the HTSUS 8471.92.5400 reads:

```
8471      Automatic data processing machines and units
          thereof; magnetic or optical readers, machines
          for transcribing data onto data media in coded
          form and machines for processing such data, not
          elsewhere specified or included
8471.92      Other

* * * *
8471.92.5400                Other:
                              Laser:
                                Capable of
                                producing
                                more than
                                20 pages per
                                minute. . . . . . . Free
```

twelve entries at issue were classified under subheading 9009.12.00; however, they were not protested within the 90 day time period after liquidation allowed by 19 U.S.C. § 1519. Plaintiff claims this was due to the reliance on a incomplete database by ACB. *Def.'s Statement,* at ¶ 1; *Pl.'s Br.,* at 5. On December 22, 1995 and February 14, 1996, Customs ruled that the "Regal" and "MajestiK" models were to be classified under the duty free subheading of HTSUS 8471 for liquidation (The Regal model was classified under 8471.92-5400, the MajestiK model was classified under 8471.60.6100. *NY Customs Ruling 817475*; *NY Customs Ruling A80061*). Xerox provided Mr. Reep with written instructions to this effect on March 20, 1996 for the "MajestiK" model and on April 15, 1996 for the "Regal" model. *Def.'s Statement*, at ¶ 14; *Pl.'s Resp.*, at ¶ 14.

On September 10, 1996, Xerox petitioned for reliquidation of these twelve entries, within the year period allowed by § 520(c)(1).[5] Customs denied Xerox's petition and subsequent protest of the denial, concluding that the entry of the merchandise as 9009.12.00 instead of 8471.92, was a "mistake of law" not remediable under § 520(c)(1). Xerox filed a timely summons in this Court to challenge Customs' decision. Customs then filed its motion for summary judgment and Xerox subsequently filed its cross motion.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is

---

[5] Parties agree that the request for reliquidation for entry 110-0060152-4 was not filed within the one year and should be severed and dismissed. *Def.'s Statement*, at ¶ 2; *Pl.'s Resp.*, at ¶ 2.

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT R. 56(c). "This may be done by producing evidence showing the lack of any genuine issue of material fact or, where the non-moving party bears the burden of proof at trial, by demonstrating that the nonmovant has failed to make a sufficient showing to establish the existence of an element essential to its case." *Black and White Vegetable Co., v. United States*, 125 F. Supp 2d 531, 536, 24 CIT ___, ___ (2000) (citing *Avia Group Int'l. Inc., v. L.A. Gear California, Inc*., 853 F. 2d 1557, 1560 (Fed. Cir. 1988); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325. (1986)).

In determining if a party has met its burden the court does not "weigh the evidence and determine the truth of the matter, but . . determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The court views all evidence in the light most favorable to the non-moving party, drawing inferences in the nonmovant's favor. *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

## IV. DISCUSSION

Section 520(c) of the Tariff Act of 1930, as amended at 19 U.S.C. § 1520(c) provides that in certain cases, notwithstanding that a valid protest was not filed, an entry may be reliquidated to correct:

> a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or other inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction.

Section 1520(c)(1). This section is not a remedy for every mistake, but offers relief in a limited number of circumstances. *See PPG Industries, Inc. v. United States*, 7 CIT 118, 123 (1984). "A 'mistake of fact exists where a person understands the facts to be other than they are, whereas a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts.'" *Hambro Automotive Corp. v. United States*, 66 C.C.P.A., 113, 118, 603 F.2d 850, 854 (1979) (quoting 58 C.J.S. *Mistake* p. 832). An inadvertence is defined as an oversight or involuntary accident. *PPG*, 7 CIT at 124. Clerical errors are a mistake made by a subordinate, who does not have any duty to exercise judgment with regard to the classification. *See Ford Motor Co. v. United States*, 24 CIT ___, ___, 116 F. Supp. 2d 1214, 1241 (2000) (citing *S. Yamada v. United States*, 26 C.C.P.A. 89, 94 (1938)). Clerical mistakes are often mistakes in actual writing or entering of numbers. *See PPG*, 7 CIT at 124.

Xerox points to two mistakes evident in the record which it claims are correctable under § 520(c)(1). Xerox claims that the failure of ACB to protest the entries after they had been wrongly classified was an inadvertence and, therefore, correctable under § 520(c)(1). If the entries had been properly protested Customs would have granted relief through the protest. The second mistake is one of fact, that the person making the actual entries for Fritz mistakenly relied on the description given on the invoice to determine the proper classification. The invoice description was incomplete because it did not describe the actual contents of the entries. In this way a mistake as to the correct characteristics of the product led to the incorrect HTS number on the entry documents.

A.     Failure to protest as a mistake or inadvertence correctable under Section 520(c).

Xerox seeks to expand the scope of Section 520(c) to allow a party to correct a failure to protest an improper classification. *Pl.'s Br.* at 19. Previous cases have held that despite failure to protest a mistake of fact can be corrected. However, no case on record holds a failure to protest can be mistake of fact in itself.

Prior to securing a Customs ruling confirming the status of the two printers as classifiable at the duty-free subheading, Xerox instructed its brokers to classify them under this subheading and protest any entries already entered. *Cassano Aff.* at ¶ 5; Cassano Letter to Levitt, July 17, 1995. According to Mr. Levitt of Associated Customhouse Brokers, he developed a database to track the entries. *Levitt Aff.* at ¶ 5. Based on this database, Associated filed several protests challenging the liquidation of the multifunction printers already entered under HTSUS 9009.12. This database, however, was not complete. It failed to include several entries, including all those at issue in this case. *Id.* at ¶6. This mistake was discovered after the ninety day deadline to file protests had passed.

The government does not deny that had the protests been filed within ninety days they would have been granted. Xerox's failure to file a timely protest, however, means that § 520(c), which allows one year to correct a mistake not based on law, is its only avenue of relief. The government contends, in turn, that § 520(c) does not provide relief from failure to file a timely protest.

Xerox points to two cases to support its contention that § 520(c) can be used to correct a failure to protest. *Pl.'s Brief* at 14-15. *Executone Information Systems v. United States* involved duty-free imports under the Carribean Basin Economic Recovery Act. 96 F.3d 1383 (Fed. Cir.

1996). To qualify for duty-free treatment importers had to file "Form A Certificates of Origin." Executone mistakenly failed to file the Form A, and did not file a timely protest. The goods were liquidated at the non duty-free rate. Executone filed for relief under § 520(c), which was denied. On appeal to the Federal Circuit, the government asserted that liquidations are conclusions of law and therefore not correctable. Executone claimed that it mistakenly believed that the Form A had been filed, and, therefore, made a mistake of fact not law. The Court rejected the government's argument that all aspects of liquidation are conclusions of law beyond the remedial power of § 520(c). The Court held that merely because the "appeal does not present a typical challenge to a Customs classification where Customs evaluated merchandise and, based on its construction of the tariff schedule, determined into which of two categories the merchandise must be placed," does not mean relief cannot be granted. *Executone,* 96 F.3d at 1388. Although *Executone* rejected the exceedingly narrow reading of relief under § 520(c) advocated by the government in that case, its holding does not extend far enough to help Xerox here. *Executone* dealt with compliance with import procedures, a predicate to a classification. Xerox is attempting to extend § 520(c) to correct a failure to protest, which is subsequent to classification and liquidation. In addition, Xerox is not attempting to correct a defect in a protest, but the actual decision not to file a protest.

Xerox also seeks support for its position from *Aviall of Texas, Inc. v. United States*, 70 F.3d 1248 (Fed. Cir. 1995). As in *Executone*, the importer in *Aviall* failed to submit the proper documentation for a duty-free import. Aviall had a blanket certificate in place, which lapsed after one year. Aviall failed to renew the certificate, but entered the product believing it was still valid. The court of appeals held this was a mistake of fact, not law. It affirmed the position

taken by this Court that "the failure to file a new yearly blanket certification was due to the fact that the broker 'forgot' to renew the blanket certification for the period encompassing these entries." 70 F.3d at 1251; *see also Aviall of Texas, Inc. v. United States*, 18 CIT 727, 734-735, 861 F. Supp. 100, 107(1994)). Mistakes of fact will often have legal consequences. This alone does not convert them into mistakes of law. Both *Executone* and *Aviall* support the idea that § 520 is not restricted to decisions relating only to classification or liquidation, and that "Customs transaction" under the statute can encompass a broad spectrum of activities. They do not show, however, that one remedial process – reliquidation under § 520(c) – should be allowed to supplant a different remedial process – a proper protest.

Section 1514, which provides for protests, and § 1520(c)(1) which provides for reliquidation to correct mistakes not based on law, are two separate avenues of relief under the statute. There is some interaction between the two remedies. An untimely protest by an importer under § 1514 may provide notice to Customs of a claim for reliquidation under § 1520(c)(1), such that an importer may be entitled to relief because his protest is converted into a claim under § 1520(c)(1). *See George Weintraub & Sons v. United States*, 12 CIT 643, 691 F. Supp. 1449 (1988) *vacated as moot* 18 CIT 594, 855 F.Supp. 401 (1994). Once a protest is converted to a request for reliquidation under § 1520, if Customs fails to reliquidate, the importer must protest under § 1514(a)(7) or its claim will expire. *See Everflora Miami, Inc. v. United States,* 19 CIT 485, 188, 885 F. Supp. 243, 247 (1995).

In this case, Plaintiff is not seeking to remedy a single protestable mistake. Xerox is attempting to use one mistake (failure to file a protest) to bootstrap another mistake (failure to properly classify entries) which it failed to assert under § 1514, into one correctable under §

1520. In addition, Xerox, with its "failure to protest" claim, argues that the subsequent mistake obviates the need to prove the initial mistake of fact in classification. It is evident that even if the court were to recognize a remedial link between sections § 1514 and § 1520, it would not alleviate the need for Xerox to establish a viable § 1520(c)(1) claim on its initial mistake of classification. *See ITT v. United States*, 24 F.3d 1384, 1387 n.4 (Fed. Cir. 1994) ("We emphasize that under no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514.") If Xerox claimed the initial mistake was one of misapprehension of the law, not correctable under § 1520, it could not rely on a subsequent mistake of fact (failure to protest) to cover its mistake of law. If the initial mistake was a mistake of fact, then the failure to protest is irrelevant, because Xerox has one year to request reliquidation under § 1520(c)(1) to correct the mistake of fact, "notwithstanding its failure to protest." § 1520(c). The court refuses Xerox's invitation to extend § 1520(c)(1) beyond what logic and precedent will support, and, consequently, Xerox cannot prevail on its argument that failure to protest by itself is a mistake of fact under § 520(c). Therefore, Defendant is entitled to summary judgment on this claim. To defeat Defendant's motion for summary judgment in its entirety Xerox must establish a viable "mistake of fact" claim based on the initial mistake of classification at entry.

B.     Mistake of Fact by Fritz Due to Inaccurate Invoices.

        Plaintiff's second claim of mistake of fact that entitles it to relief under § 1520(c)(1) is that the broker in Long Beach, Fritz, responsible for the entries mistakenly relied upon the invoice description of the product resulting in a misclassification. *Pl.'s Br.* at 13. As discussed

above, in order to show a mistake of fact eligible for reliquidation under § 1520, the mistake

must be distinguished from a mistake of law.

> A mistake of fact is any mistake except a mistake of law. . . . It has been defined as a mistake which takes place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist. A mistake of fact exists where a person understands the facts to be other than they are, whereas a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts.

*Hambro,* 603 F.2d at 853-54 (internal quotations and citations omitted). Xerox's invoices

described the products as copiers, when for purposes of classification they were, in fact, printers

entitled to the duty-free rate. The mistake is, therefore, one of fact, because the invoices'

description, relied upon by the customs broker, misinformed the broker as the actual contents of

the entries.

Defendant, rightly, asserts that Plaintiff bears the burden of coming forward with some

evidence to support its claim. The government contends, "that the evidence Xerox submitted

was insufficient to demonstrate that any misclassification was caused by a mistake of fact not

constituting an error in the construction of a law, remediable under 19 U.S.C. § 1520(c)(1)."

*Def.s' Sur-Reply to Pl.'s Reply to Def.'s Resp. to Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Def.'s*

*Sur-Reply"*) at 2 (internal quotations omitted).

There are three essential facts that Xerox needs to establish to defeat the government's

motion for summary judgment on this ground: first, that the invoices for the Regal and MajestiK

models described them as "copiers" instead of "printers;" second, that for purposes of

classification this description could result in a improper classification under the HTSUS; and

third, that it is likely the entry writer at Fritz wrongly relied on the invoice description in making

the classification decision. The parties do not dispute that the invoices describe the entries as

"copiers," or that the 3.7% duty rate under HTSUS 9009.12 applies to copiers, while the duty-free rate under 8471 applies to printers. To support its assertion that the entry writer improperly classified the entries as a result of the inaccurate description of the models the Plaintiff submitted an affidavit of Nathan Reep ("Reep Affidavit."). It is the value of this affidavit that determines the outcome of the cross-motions before the court.

Mr. Reep was a supervisor at Fritz. In his affidavit he states that he oversaw thousands of entries at Fritz in 1995, including the entries at issue in this case. Reep claimed that he worked on the Xerox account for Fritz for several years, and that most of the products he dealt with were copiers classified under HTSUS 9009. *Reep Aff.* at ¶ 2. He stated he was aware that Customs had issued rulings in 1994 that multifunction printers were to be classified under HTSUS 8471. *Id.* at ¶ 3. He stated that had he known the true nature of the products, based on his understanding of the Harmonized Tariff Schedule he would have properly classified the products under HTSUS 8471. *Id.* at ¶ 6. However, because he "was not advised of and did not know the facts concerning the subject entries, outside of the commercial invoices to [him, he] entered the printers under HTSUS subheading 9009.12." *Id.* at ¶ 7.

Subsequent to the submission of Mr. Reep's Affidavit he was deposed by counsel for the government. During that deposition several gaps in his story were revealed, and he retracted or amended several statements in his affidavit. Defendant attacks the Reep Affidavit as being "wholly without foundation," because "Mr. Reep may not even have been involved in entering the merchandise at issue." *Def.'s Sur-Reply* at 3. Defendant asks that the court disregard the affidavit in its entirety. *Id.* Problems with Mr. Reep's Affidavit include that it is not clear whether he held the position of supervisor at Fritz during the time the specific entries were filed,

and, therefore, was not "responsible for the preparation of the entries that are the subject of this case." *Id.* at 4; *Reep Aff.* at ¶ 2. Mr. Reep also conceded that he was not familiar with the Customs rulings regarding multi-function printers, which means that he could not establish that there was no confusion as to the tariff schedule. *See Def.'s Sur-Reply* at 5. Based on the responses provided by Mr. Reep at his deposition, Defendant has shown that Mr. Reep was not familiar with all aspects of the tariff schedule, and therefore, had he been responsible for the entries he could have made a mistake of law. Defendant has also cast doubt on whether Mr. Reep in his oversight role made any decision about the proper classification of the models in question. Finally, Defendant has cast doubt on whether Mr. Reep was in fact working on the Xerox account at the time of the entries.[6]

Despite these deficiencies in Mr. Reep's testimony, and, consequently, in Xerox's case, Mr. Reep was able to provide two pieces of evidence to support Plaintiff's cross-motion for summary judgment. First, as a supervisor on the Xerox account during or immediately after the entries at issue were made, Mr. Reep was familiar with the internal practices of Fritz for handling the entries and making classifications. *See Reep Dep.* at 20-30. Second, his testimony established that it was the general practice of Fritz to rely on the "airway bill, the packing slip and the invoice" to determine how to enter the merchandise, including its classification. *Reep Dep* at 23.

Given this quantum of information in support of Plaintiff's motion for summary judgment, to dispose of the pending motions it is necessary to return to the requirements for

---

[6] Reep's resume, submitted with his deposition, states he worked at Fritz the year after (1996) the entries at issue. During his deposition he explained that he prepared the resume from memory and that the dates may not have been accurate. *See Reep Dep.* at 43.

summary judgment. The court has before it two motions. Defendant contends,

> Xerox has failed to submit legally sufficient evidence establishing, or at the very least, demonstrating the existence of genuine triable issues of fact, that its broker or Customs officials made a "mistake of fact" in entering or liquidating the merchandise under subheading 9009.12.00 HTSUS, and has acknowledged that it has no information regarding the actual basis for such classification.

*Def.'s Resp. to Pl.'s Opp. to Def.'s Mot. for Summ. J. and Cross-Mot. for Summ. J.* at 15.

Defendant made this claim prior to the submission of the Reep Affidavit and subsequent deposition. However, the government claims that the Reep Affidavit does not change its contention that Xerox has failed to meet its burden. *See Def.'s Sur-Reply* at 2.

Normally, the "movant bears the burden of demonstrating absence of all genuine issues of material fact." *Cooper v. Ford Motor Co.* 748 F.2d 677, 679 (Fed. Cir. 1984). However, where the nonmovant party bears the burden of proof at trial, the moving party can succeed by "demonstrating that the nonmovant has failed to make a sufficient showing to establish the existence of an element essential to its case." *Black and White Veg. Co.*, 125 F. Supp. at 536 (citations omitted). Xerox is a nonmoving party who bears the burden of proof at trial. The essential element to its case that it needs to show by a preponderance of the evidence at trial is that the entry writer at Fritz mistakenly relied on the inaccurate description provided on the invoice for the Regal and MajestiK printers. As discussed above, Xerox relies on the Reep Affidavit to support this claim. Defendant asks that the court disregard the whole of the Reep Affidavit because it "does not accurately represent either Mr. Reep's involvement with the merchandise in issue here or Mr. Reep's memory. . . ." *Def.'s Sur-Reply* at 3.

Under USCIT Rule 56(e) the court requires that "affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein." If some statements contained in the affidavit do not meet the requirements of the rule, it does not foreclose the use of other statements which do qualify. *See U.S. v. Alessi*, 599 F.2d 513, 514-15 (2d Cir. 1979). Therefore the court does not have to disregard the whole of the Reep Affidavit, only those parts which do not comport with Rule 56(e). Examining the affidavit, in light of the deposition, Mr. Reep's Affidavit provides facts, based on personal knowledge, of the two essential points Xerox needs to establish. Mr. Reep worked at Fritz on the Xerox account the year of, or the year after, the entries at issue. *Reep Dep*. at 79. Mr. Reep was familiar with the practice at Fritz that primarily relied on the invoice description for filing of entries on the Xerox account. *Id.* at 71. This description of the procedures in place, along with the actual invoices describing the products as copiers, provides some evidence that the classification was due to a mistake of fact as to the actual product being entered. If all inferences are granted to Xerox's statement of facts, it is possible to find that the misclassification was a result of a mistake of fact. Therefore, it would not be proper to grant Defendant's motion for summary judgment.

The government, by not putting forward any evidence to challenge the Plaintiff's version of events has left itself open to the granting of summary judgment in favor of the Plaintiff, on the grounds that no material facts are in dispute. Plaintiff has made out a prima facie case, rebutting the presumption held by the government. Defendant has, however, raised a significant issue regarding the credibility of the Reep Affidavit. Credibility issues are properly left for trial, not to be weighed by the court at the summary judgment phase. *See Glaxo-Wellcome v. United States*, 24 CIT ___, ___,126 F. Supp. 2d 581, 585 (2000). Despite producing a modicum of evidence to establish each of the elements of its case, Xerox has not shown that it would

necessarily prevail at trial.[7]  In consideration of the eleventh hour discovery of Mr. Reep and the

surrounding inconsistencies in his affidavit, it would not be proper to grant Xerox's motion for

summary judgment on such meager supporting documents.[8]  *See e.g. Hanover Ins. Co. v. United

States*, 26 CIT ___, ___, Slip Op. 02-71 at 1 (2002) ("The court determined to require the

individuals who subscribed to those submissions to appear at a trial and undergo cross-

examination upon the long-held belief that that kind of interrogation is the surest test of truth and

a better security than the oath.") (citations omitted).

In addition, during the deposition of Mr. Reep, specific procedures regarding how Fritz

handled the Xerox account were fleshed out.  Apparently, Mr. Reep supervised the work of the

entry writers, but did not review all the entries, relying instead on spot checks.  *Reep Dep*. at 33.

The entries at issue in this case were done by Jared Hirata.  *Id*. at 32.  Mr. Reep reported that if

he or Mr. Hirata had any questions about how to classify an entry, or if the invoice, air waybill or

packing list description was not sufficient they would contact Ms. Reina Cavatana at Xerox.  *Id*.

at 23-24.  In this case, there is no record of anyone at Fritz contacting Ms. Cavatana or anyone

---

[7] Mr. Reep did not contradict himself with regard to the two facts necessary to support summary judgment.  Denying summary judgment for the purpose of setting an issue for trial to evaluate credibility of a witness is distinct from those cases where a party contradicts its own evidence to attempt to create a dispute of material fact.  This opinion, therefore, is consistent with those cases holding that a "party may not...defeat the motion merely by submitting [statements] containing...contradictions of previously admitted facts."  *United States v. Modes, Inc.*, 16 CIT 879, 883, 804 F. Supp. 360, 365 (1992) (citing *Lovejoy Electronics, Inc. v. O'Berto*, 873 F.2d 1001, 1005 (7th Cir. 1989); *Van T. Junkins and Associates v. U.S. Industries*, 736 F.2d 656, 657 (11th Cir. 1984); *Radobenko v. Animated Equipment Corporation*, 520 F.2d 540, 544 (9th Cir. 1975); *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

[8] Plaintiff initially claimed it was unable to locate Mr. Reep, and it was only after the initial round of briefings that his affidavit was produced.  *See Pl.'s Resp. to Def.'s Motion to Strike Untimely Aff*. at 2.

else to clarify the nature of the Regal and MajestiK models.  Mr. Reep also reported that work done at Fritz was reviewed in monthly meetings, based on a report done by Mr. Reep.  *Id*. at 26.

Given these sources of information, there is a possibility that trial may produce enough evidence to reach a supportable conclusion that the misclassifications were caused by a mistake of fact.  The record currently before the court is sufficient to defeat Defendant's motion for summary judgment.  However, it is not enough to support granting Plaintiff's cross-motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons Defendant's Motion for Summary Judgment is denied in part and granted in part, and Plaintiff's Motion for Summary Judgment is denied. The parties are to confer and contact chambers within thirty days to report on timing for a trial in this matter. Judgment will be entered accordingly.

Dated:_____                          _____
      New York, NY                                                    Judith M. Barzilay
                                                 Judge