**Slip-Op. 04-113**

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

|  | x |
|---|---|
|  | : |
| XEROX CORPORATION, | : |
| Plaintiff, | : |
|  | : Court No. 99-02-00086 |
| v. | : |
|  | : |
| UNITED STATES, | : |
| Defendant. | : |
|  | : |
|  | x |

[Judgment for Plaintiff.]

Decided: September 8, 2004

*Neville Peterson LLP, (John M. Peterson, Curtis W. Knauss),* for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General, United States Department of Justice; *Barbara S. Williams*, Assistant Branch Director, International Trade Field Office; (*Amy M. Rubin*), Civil Division, United States Department of Justice, Commercial Litigation Branch; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, of Counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

### I. INTRODUCTION

This matter is before the court for decision following a bench trial held on March 2 and 4, 2004. Plaintiff Xerox Corporation ("Plaintiff" or "Xerox") challenges Defendant the United States Bureau of Customs and Border Protection's ("Defendant" or "Customs")[1] refusal to

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the Bureau of Customs and Border Protection of the United States Department of Homeland Security. *See*

reliquidate certain entries of electrostatic multifunction color photocopier/printers pursuant to 19 U.S.C. § 1520(c).[2] Granting Defendant's Motion for Summary Judgment in part and denying it in part and denying Plaintiff's Motion for Summary Judgment, the court previously opined in *Xerox Corp. v. United States*, 26 CIT __, 219 F. Supp. 2d 1345 (2002), ("*Xerox I*")[3] that there were material facts at issue regarding the entry procedures used by Plaintiff's customs broker. The court in *Xerox I* framed the issue for trial as follows: Plaintiff "needs to show by a preponderance of the evidence at trial that the entry writer at Fritz mistakenly relied on the inaccurate description provided on the invoice for the Regal and MajestiK printers." *Xerox I*, 219 F. Supp. 2d at 1353. Accordingly, a bench trial was held in March 2004. Xerox presented two witnesses at trial: Graham Cassano, Xerox's Director of Customs and Tariff Administration, and Jared Hirata, a former Fritz employee, who appeared via live video transmission. The parties stipulated to the admission of the deposition testimony of two other witnesses, Reina Cabatana, a former Xerox employee, and Nathan Reep, a former Fritz supervisor.[4] Pursuant to the following findings of fact and conclusions of law, and in accordance with USCIT R. 52(a), the court enters a final judgment in favor of Plaintiff and against Defendant.

---

*Reorganization Plan Modification for the Department of Homeland Security*, H.R. Doc. 108-32 at 4 (2003).

[2] *See* Conclusions of Law number 3, *infra*.

[3] Familiarity with the court's decision in *Xerox I* is presumed.

[4] The trial lasted two days. In this opinion, the transcript of the first day of the trial is denoted "*Trial Tr. 1*," and the second day, "*Trial Tr. 2*."

## II. JURISDICTION AND STANDARD OF REVIEW

Jurisdiction of the Court is found in 28 U.S.C. § 1581(a). Even though Customs' factual determinations enjoy a presumption of correctness, the presumption does not extend to questions of law. *See, e.g., Toy Biz, Inc. v. United States*, 27 CIT __, 248 F. Supp. 2d 1234 (2003). Moreover, "the Court makes its determinations upon the basis of the record made before the Court, rather than that developed by Customs." *G&R Produce Co. v. United States*, 27 CIT __, 281 F. Supp. 2d 1323, 1326 (2003), *aff'd* No. 04-1082 (Fed. Cir. Aug. 27, 2004) (citing *United States v. Mead Corp.*, 533 U.S. 218, 233 n.16 (2001)). Accordingly, the court makes the following findings of fact and draws the following conclusions of law after holding a *de novo* bench trial in this case.

## III. FINDINGS OF FACT

### A. Facts Uncontested by the Parties and Agreed to in the Pretrial Order.

1. Plaintiff Xerox Corporation entered the merchandise in question into the United States for consumption at Los Angeles/Long Beach, California, during the period of May 1995 to September 1995. The entries were liquidated during the period of September 1995 to January 1996 "as entered."

2. The imported merchandise in question consists of various models of "Regal" and "MajestiK" image output terminals.

3. The entry numbers in question are as follows: 110-0060198-7, 110-0060292-8, 110-0060359-5, 110-0060362-9, 110-0060534-3, 110-0060611-9, 110-0060704-2, 110-

0060765-3, 110-0060778-6, 110-0060808-1, and 110-0060865-1. There were originally twelve entries in the case, but the parties have agreed that the entry number 110-0060152-4 should be severed and dismissed from the action because the request for reliquidation was outside the one-year window and therefore untimely for this entry. *See* Pretrial Order Section B – Jurisdiction.

4.    The merchandise was entered under subheading 9009.12.00 of the Harmonized Tariff Schedule of the United States (1995) ("HTSUS") as photocopying apparatus. The duties were assessed on the merchandise at the rate of 3.7% *ad valorem*.

5.    According to Customs N.Y. Ruling No. A80061 of February 14, 1996, the MajestiK 5760 model was determined properly classifiable as laser printer units under subheading 8471.60.6100, HTSUS. Goods so classified are duty-free.

6.    According to Customs N.Y. Ruling No. 817475 of December 22, 1995, the Regal 5790 model was determined properly classifiable as laser printer units under subheading 8471.92.5400, HTSUS, in 1995 and under subheading 8471.60.6100, HTSUS, in 1996. Goods so classified are duty-free.

7.    The merchandise was entered by A.J. Fritz Companies ("Fritz"), one of Xerox's customs brokers.

8.    Xerox failed to timely protest the classification of its merchandise pursuant to 19 U.S.C. § 1514 within ninety days of the liquidation of the entries in question. Instead, Xerox's petition for reliquidation filed on September 9, 1996 asserts that the entries should be reliquidated duty-free pursuant to 19 U.S.C. § 1520(c) based on the contention that Fritz

committed a "mistake of fact" and/or "inadvertence."

**B.  Facts Established at Trial.**

1.      Jared Hirata was the employee at Fritz who entered most of the merchandise in question.

2.      Mr. Hirata would look at the invoice, packing list, and airway bill to determine how to enter merchandise.  If a part number was listed with no commercial description, he would contact Fritz's contact at Xerox, Reina Cabatana, after notifying his supervisor or manager.  *See Trial Tr. 2* at 5-9, 14-18.  Mr. Reep's stipulated deposition testimony established that this practice was followed by other Fritz entry writers during the time period in question.

3.      Mr. Hirata does not remember whether he talked with anyone at Xerox regarding the entries in question.  *See Trial Tr. 2* at 9.

4.      The merchandise was listed as copiers or color copiers on commercial invoices generated by the foreign manufacturer.  *See Trial Tr. 1* at 39.[5]

5.      Ms. Cabatana at Xerox, who would have been typically contacted by the customs broker regarding classification, stated in her deposition testimony that she had no recollection of having been contacted by Mr. Hirata or any other Fritz employee with respect to the merchandise in question.  *See Cabatana Dep.* at 37, 58.

6.      Mr. Cassano at Xerox, a credible witness, indicated that if he or his department had been contacted by Fritz seeking classification advice, he would have remembered it because Xerox at the time was not aware that Fritz was the broker responsible for entering the line

---

[5] Trial testimony also established that Xerox owned 50% of the foreign supplier, Fuji Xerox Corporation.  *Trial Tr. 1* at 40.

of merchandise that included the printers at issue. He had no such memory. *See Trial Tr. 1* at 31-32 ("bells and whistles would have gone off"). On the other hand, Mr. Cassano was aware that Fritz had entered such merchandise by July 25, 1995. *See id.* at 36. He thought that it was "a random entry." *Id.* at 37.

7.     Mr. Hirata worked for Fritz from 1993 to 1998. *See Trial Tr. 2* at 4.

8.     Mr. Hirata kept a list for his personal use of Xerox part numbers that he entered and their corresponding tariff numbers. The classification information on the list came from Xerox. *See* Pretrial Order Section C-1 – Uncontested Facts ¶ 38. He no longer has this list.

9.     Mr. Hirata asserts that entries numbered 110-0060534-3 and 110-0060808-1 did not contain any documents bearing his handwriting. Mr. Hirata filed all the other entries. Thus, there are two categories of entries for the purposes of the resolution of this case: Mr. Hirata's and those of an unidentified entry writer at Fritz.

10.     At the time Mr. Hirata entered the merchandise, he was not aware that the merchandise could be connected to a computer, receive data, and print it out and that it could not make a photocopy. *See Trial Tr. 2* at 4-5, 9.[6]

11.     By July 6, 1995, Xerox's counsel knew that the imported merchandise in question was properly classifiable under HTSUS subheadings 8471.92 or 8473.30.60.

12.     By letter dated July 17, 1995, Xerox informed its principal customs broker Associated Customhouse Brokers, Inc. ("ACB") of its intent to apply for a ruling on the merchandise

---

[6] This fact is essential to the classification of the goods under Note 5 of HTSUS Chapter 84.

to be classified as electronic printers.  A similar letter was not sent to Fritz because Xerox did not know Fritz was entering the merchandise in question.

13.     Fritz was informed of the alternative classifications of MajestiK on March 20, 1996 and of Regal on April 15, 1996.

14.     If any of these Findings of Fact shall more properly be Conclusions of Law, they shall be deemed to be so.

## IV. CONCLUSIONS OF LAW

1.     Plaintiff maintains that the errors in classifications constitute "mistake[s] of fact" under 19 U.S.C. § 1520(c)(1) and that Customs should refund Xerox for the excess duty it collected.  To that effect, Plaintiff argues that "evidence presented at trial demonstrates that the goods were entered as 'photocopiers' by a Customhouse broker who did not know the actual nature [of] the merchandise, and who relied upon invoice and other descriptions which incorrectly described the goods as 'copiers.'" *Pl.'s Post-Trial Br.* at 3. Section 1520(c)(1) states that

Notwithstanding a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry or reconciliation to correct–

(1) a clerical error, mistake of fact, or other inadvertence . . . not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of liquidation or exaction . . . .

19 U.S.C. § 1520(c). To successfully obtain a reliquidation under this statute for a mistake of fact, "(1) there must be a mistake of fact; (2) the mistake must not amount to an error in the construction of the law; (3) the mistake is adverse to the importer; and (4) the mistake is established by documentary evidence." *Brother Int'l Corp. v. United States*, 28 CIT __, Slip Op. 04-67, at *5 (June 10, 2004) (quotations and internal quotes omitted); 19 U.S.C. § 1520(c)(1); 19 C.F.R. § 173.4(b).

2.  "[T]he purpose of section 1520(c)(1) as a means for refunding money erroneously collected suggests that it should be interpreted liberally." *G&R Produce Co. v. United States*, No. 04-1082, at * 7 (Fed. Cir. Aug. 27, 2004) (citing *Aviall of Tex., Inc. v. United States*, 70 F.3d 1248, 1250 (Fed. Cir. 1995) and *ITT Corp. v. United States*, 24 F.3d 1384, 1388-89 (Fed. Cir. 1994)). *But see Fujitsu Compound Semiconductor v. United States*, 363 F.3d 1230, 1235 (Fed. Cir. 2004) (referring to section 1520(c)(1) as a "limited exception").

3.  "The Government has no interest in retaining duties which were improperly collected as a result of clerical error, mistake of fact or inadvertence." *Chrysler Corp. v. United States*, 24 CIT 75, 87 F. Supp. 2d 1339, 1348 (2000) (quoting *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 336 F. Supp. 1395, 1399 (Cust. Ct. 1972), *aff'd* 61 C.C.P.A. 90, 499 F.2d 1277 (1974) (quoting Hearings on H.R. 5505 before the Senate Committee on Finance, 82nd Cong., 2d Sess., 30 (1952))).

4.  In maintaining that Plaintiff failed to meet its burden at trial, Defendant first argues that the classification of the merchandise in question was not settled at the time of entry or

liquidation. *Def.'s Post-Trial Br.* at 7. Because the issue was not settled, according to Defendant, there could not have been a classification error, as required by section 1520(c). *Id.* at 8. "[A]ll but one of the entries in issue were liquidated, as entered, before the relevant ruling was issued." *Id.* at 9. Along similar lines, Defendant also argues that the classification was "not incontrovertible" at the relevant time. *Id.* at 12. Plaintiff does not directly address this argument, but points out that the proper classification of the merchandise was never in dispute because the classification of similar merchandise (that of "multifunction printers") was already established in previous rulings of Customs. *Pl.'s Post-Trial Br.* at 4 & n.4 (listing N.Y. Customs Rulings 897228, 804496, 811776, and 805805, issued in 1994 and the first part of 1995). Moreover, Plaintiff elicited testimony at trial that during the 1995-96 period the Customs officer in charge of Xerox's account, without furnishing a written opinion, fully agreed with Xerox that the merchandise was properly classifiable as printers. *See Trial Tr. 1* at 59-61. Accordingly, the court finds that the proper classification of the merchandise was not in dispute in this case and that Defendant's argument regarding the "unsettled" nature of law is without merit.[7]

5.     Plaintiff has met its burden in proving that the entry writer at Fritz mistakenly relied on the inaccurate description on the invoices to classify the merchandise in question and that this mistake is one of fact. Accordingly, Plaintiff is entitled to a refund of its overpayment of duties to Customs on the eleven entries listed above.

---

[7] Moreover, Defendant has not fully demonstrated to this court why this issue is relevant to the viability of a section 1520(c) claim. Frankly, the court is compelled to note that the multiple "red herrings" raised by counsel in this case were unhelpful in resolving it.

6.    Plaintiff must first show that it made a mistake of fact and must do so by testimonial and documentary evidence. *See Pl.'s Post-Trial Br.* at 9.

7.    A mistake of fact "occur[s] in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to." *Chrysler Corp.*, 87 F. Supp. 2d at 1343 (citations omitted); *G&R Produce Co. v. United States*, No. 04-1082, at * 5 (Fed. Cir. Aug. 27, 2004) (citing *Hambro Auto. Corp. v. United States*, 603 F.2d 850, 855 (CCPA 1979)); *see also C.J. Tower*, 336 F. Supp. at 1400 (finding a mistake of fact existed where neither the importer nor the Customs officer was aware that the merchandise was emergency war materials entitled to duty-free treatment until after the liquidations became final). More specifically, a "mistake of fact . . . is a factual error that, if the correct fact had been known, would have resulted in a different classification." *Degussa Can. Ltd. v. United States*, 87 F.3d 1301, 1304 (Fed. Cir. 1996) (quotation marks omitted). Notably, to meet its burden of proof,

> [the] importer need[ not] demonstrate the underlying cause of the factual misunderstanding. Rather, courts have required a plaintiff to demonstrate, from the entry documents or other evidence, only two points in order to substantiate its "mistake of fact": (a) the correct state of facts; and (b) that either the importer or Customs had a mistaken belief as to the correct state of facts.

*Chrysler Corp.*, 87 F. Supp. 2d at 1352.

8.    The following evidence points to a mistake of fact in the mistaken classification of entries in question. There are two categories of entries implicated in this case: those that can be identified as written by Mr. Hirata and those that cannot. With regard to the former, it was established at trial that at the time Mr. Hirata classified the merchandise he was

unaware of what the goods were. *See Trial Tr. 2* at 4-5, 9-10. He did not know that the merchandise could be attached to a computer, receive data, and print it out; and he did not know that the merchandise could not make a photocopy. He did not know that the merchandise consisted of printers and not of copiers. Mr. Hirata never saw the merchandise and relied on the invoice descriptions. He classified merchandise based on the invoice description and part number and consulted a list of tariff classifications that he prepared. If he classified an item that was not on his list, he would contact Xerox for classification advice after notifying his supervisor. The invoices carried incorrect descriptions of the merchandise. Nobody (including Mr. Hirata) remembers Mr. Hirata (or any other Fritz employee) contacting Xerox regarding the merchandise at issue to seek further advice on classification. As Mr. Hirata had the mistaken belief that the merchandise was other than what it was, it is clear that Mr. Hirata's reliance on inaccurate merchandise descriptions on the invoices constitutes a mistake of fact. *Cf. Zaki Corp. v. United States*, 21 CIT 263, 960 F. Supp. 350, 359 (1997) (finding that plaintiff's broker made a mistake of fact when she entered the merchandise believing the entries to be radiobroadcast receivers instead of combination articles).

9.    With regard to the second category of entries, stipulated deposition testimony established that it was a general business practice at Fritz to first look at the airway bill, the packing slip, and the invoice description to classify merchandise. "[I]f it said copier, [Fritz] inputted it as copier. If there was any indication that it was anything other than a copier," Fritz would have contacted Xerox. *Reep Dep.* at 23, 70-71; *see also Xerox I*, 219 F.

Supp. 2d at 1352.  This testimony is unchallenged and supports Mr. Hirata's testimony.

The invoices describe the merchandise as copiers.  There is no indication on the invoices

that the merchandise was other than copiers.  It is undisputed that all of the entries were

made by Fritz.  There is nothing in the record to show that Fritz ever contacted Xerox

regarding these entries.  Accordingly, the court finds that the remaining entries made by

an unidentified entry writer at Fritz were also misclassified as the result of a mistake of

fact.

10.    In opposition, Defendant first relies on Mr. Cassano's testimony that he had nothing to do

with merchandise in question.  *See Def.'s Post-Trial Br.* at 17.  Defendant also indicates a

number of inconsistencies in the record.  For example, Mr. Cassano's testimony revealed

that Carla Cutler, who assisted ACB with classification issues, might not have always

identified herself as an ACB employee and once used the letterhead of Xerox when

communicating with Fritz.  *See id.* at 18; *see also Trial Tr. 1* at 28-29.  Although not

entirely clear,[8] Defendant's argument seems to imply that Mr. Hirata might have received

classification advice from Ms. Cutler, who in turn might have gotten such advice from

Xerox itself and therefore the mistake could have been one of law.  *See Def.'s Post-Trial*

*Br.* at 21; *see also Trial Tr. 2* at 26 (counsel on summation explaining her belief that Mr.

Hirata communicated with Ms. Cutler).  Moreover, with respect to notations on the

---

[8] Mr. Cassano also added that Carla Cutler would not have typically provided classification advice to Fritz employees because ACB and Fritz are competitors and that it would have been "noteworthy" to call a competitor on classification of goods the other broker should have been importing.  *Trial Tr. 1* at 47.  He did, however, instruct her to contact Fritz in March 1996.  *See Trial Tr. 1* at 64.

documentation for one entry, Mr. Hirata testified that he must have made the notations at Xerox's direction undermining the theory that Xerox was not contacted in regard to the entries in question. *See Trial Tr. 2* at 19-22. Defendant also maintains that Xerox failed to show any business "'practice' at Fritz that would have obviated the need for Xerox to provide entry-specific evidence supporting its claim." *Def.'s Post-Trial Br.* at 23.

11. The court finds that inconsistencies in the record, if any, are not sufficient to undermine other evidence that supports Xerox's contention. The Federal Circuit has "defined preponderance of the evidence in civil actions to mean 'the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it.'" *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 769 (Fed. Cir. 1993) (quoting *Hale v. Dep't of Transp., Fed. Aviation Admin.*, 772 F.2d 882, 885 (Fed. Cir. 1985)). Accordingly, the court finds the greater weight of the evidence supports Xerox's version of events that the mistake made was one of fact.

12. Plaintiff next must show that the mistake was adverse to it. *See Pl.'s Post-Trial Br.* at 14. As correctly observed by Xerox, the parties agree that the correct classification of printers is HTSUS heading 8471, which entitles the merchandise to duty-free treatment. Xerox mistakenly paid Customs duties at a rate of 3.7% applied to the price paid on the transactions at issue. The mistake made in this case is material and to the detriment of Plaintiff.

13. Plaintiff must also show that the mistake was not made in the construction of law. *See Pl.'s Post-Trial Br.* at 17. In contrast with mistakes of fact, "[m]istakes of law . . . occur

where the facts are known, but their legal consequences are not known or are believed to be different than they really are." *Executone Info. Sys. v. United States*, 96 F.3d 1383, 1386 (Fed. Cir. 1996) (quotation and emphasis omitted) (also suggesting that determination of the existence of a mistake of law lies with the court). For example, misinterpreting Customs' instructions would constitute a mistake of law. *See Ford Motor Co. v. United States*, 157 F.3d 849, 859 (Fed. Cir. 1998). Likewise, intentional or negligent acts or inaction fall within the scope of mistakes of law.[9] *See Century Imps., Inc. v. United States*, 205 F.3d 1308, 1313 (Fed. Cir. 2000). Mr. Hirata (or Fritz) did not know the true nature of the merchandise he mistakenly classified. There is no evidence that the mistake involved the construction of the HTSUS provisions or any other law. The mistaken reliance on inaccurate invoice descriptions in classification does not constitute a mistake of law. It is true that Xerox became aware of the incorrect classifications earlier. However, it failed to notify Fritz as it did not know that Fritz was entering the merchandise. There is no indication that any communication took place between Fritz and Xerox regarding the classification of the entries at issue. Therefore, the court cannot say that a mistake of legal consequence, if any, extends from Xerox to Fritz. In fact, it is clear from the record that had Fritz contacted Xerox regarding the merchandise, Fritz would have become aware that they were printers and classify them

---

[9] Even though Defendant alluded to a possible negligent inaction by Plaintiff, this theory remains undeveloped.

correctly.[10] Fritz made the classifications comparing the invoice descriptions with tariff classifications provided by Xerox. If the invoice said copier (as here), Fritz classified it as copier. There was no need to suspect that the merchandise was other than a copier from the documents. Fritz mistakenly relied on the invoice and misclassified the merchandise. The mistake was as to the nature of the merchandise and not as to whether the merchandise fell under a specific provision of the HTSUS. *Cf. Degussa*, 87 F.3d at 1304. There is no dispute that the merchandise is properly classifiable under HTSUS heading 8471. Accordingly, the court finds that any mistake made was not one of law.

14.    For all the foregoing reasons, Plaintiff has met its burden articulated in *Xerox I* to prove that Fritz mistakenly relied on incorrect invoice descriptions for its merchandise in classifying them. Therefore, Plaintiff shall receive the refund of duties it seeks on its entries. A separate judgment will be entered accordingly.

15.    If any of these Conclusions of Law shall more properly be Findings of Fact, they shall be deemed to be so.


Dated:_September 8, 2004_                    ____/s/ Judith M. Barzilay___
    New York, NY                              Judith M. Barzilay
                                       Judge

---

[10] Even though the importer need not "demonstrate the underlying cause of the factual misunderstanding," *Chrysler Corp.*, 87 F. Supp. 2d at 1352, it is fairly clear that it was this disconnect between Fritz and Xerox that caused the mistake. There is testimony to suggest that the company "was transitioning from photocopiers to printers," and subsequently sought a ruling from Customs regarding the multifunction machines. *Trial Tr. 1* at 24, 32. The particular entries in question arrived during this transition period when Xerox's customs broker was not yet aware of what they were.